UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

   v.                                                Case No. 17-CR-16 (LA)

LACEY STANICK,

          Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

      Lacey Stanick is a loving mother of three boys. She is also an artist, creating beautiful flower arrangements at the flower shop where she has worked for nearly 20 years. Lacey lives behind this façade of happy florist with a childhood diagnosis of ADHD and anxiety coupled with depression. All her beautiful flowers couldn't mask the demons Lacey was fighting. Lacey learned that it was easy to trade her Adderall prescription for Percocet and Oxycodone to self-medicate her depression and anxiety. And, like so many people, Lacey Stanick became a victim of the opioid epidemic. As her addiction became stronger and money more scarce, Lacey met a fellow addict who had a source. His source was in Milwaukee and he would travel to buy pills for others, including Lacey. And Lacey would get her pill in payment, as long as she got rid of the other pills he gave her. So Lacey began taking care of other addicts for her daily fix.

      Lacey, the only woman in the conspiracy from Northern Wisconsin was on the local police radar in this small rural resort town for a reason. She was pregnant and easily identified by the other addicts used as confidential informants. CIs and codefendants referred to her often as the "blond pregnant chick." She was judged harshly by the police and her fellow addicts. They judged her as they watched her belly grow, judged her as they shared pills with her. It wasn't until a month after she gave birth to a healthy son that Lacey was scooped up at her home in a dawn

1

raid and driven 5 hours to court in Milwaukee. A compassionate magistrate judge released the breast feeding mother and ordered treatment. Lacey immediately returned home to feed her baby and care for her family.

Release was not without its frightening challenges. The judgments in the community continued. Her abusive ex-husband started a custody battle for their 12 year old son. The Department of Human Services opened a file on her children and got involved with her new baby. The USPO, Pretrial Services set up AODA and psychological assistance. Lacey's anxiety increased, the pressure of the federal indictment and the threat of prison, building. Still, she was welcomed back to work at the flower shop to practice her art and earn a living. It was this team who became Lacey's best advocates. Lacey went to treatment, support groups, her psychiatrist/therapist. She worked with her social worker, took parenting classes, took her prescribed medications. She returned to work at the flower shop and found creative refuge in her work. And Lacey kept making her flower arrangements. Even when she relapsed with alcohol and was arrested for drunk driving, this makeshift team of social workers, therapists and probation agent didn't chastise Lacey. The magistrate judge did not simply lock her up. They all helped Lacey pick herself up and get back on her road to recovery and sobriety.

Lori Petrucelli wrote a letter in support: "I met Lacey when she became a patient at the FHC Alcohol 3 Drug Recovery Center in Minocqua. I was employed there as an appointment coordinator receptionist. Since my leaving there in June I have kept in touch. I wanted to say that Lacey has worked so hard on her program and herself. I felt very proud to see how good she was and is still doing. She came to every appointment and is a very strong young woman. I know she feels remorse for her past mistakes and is determined to stay on her path. I pray you are lenient as she is strong in her recovery and most of also she can stay with her children. I really believe she deserves this chance."

Lacey's father quit drinking in support of his daughter. Mr. Butler wrote the following to the court: "Please invest your trust to my sweet daughter as she had faults a couple of years ago and has started a loving family. Alcohol is a disease which makes you do things. She is such a sweet young lady that would help anybody anytime. She is a very hard worker at her job and she loves it. Her loving daddy, Cubbie." In her attached letter, Lacey's mother describes her daughter as a "lovely, amazing woman who not only is my best friend but a good wife and wonderful mother."

Lacey has now married the father of her two youngest. She has a third healthy baby boy. She is on probation for the next 2 years for her DUI and has served a painful 40 days in jail on that case. While in jail, she pumped her breasts every 2 hours to feed her baby on the outside. She has been punished. She has been deterred. She has been made an example of to the public. She has suffered the collateral consequences from being a woman and mother convicted of a federal crime.[1] She has been scorned and wears the big red letter A, for Addict. A sentence not greater than necessary is a probation sentence here. With Lacey's support network, her family and her own fortitude, Lacey has all the tools to continue on her positive path to recovery. She does not need, nor is society served, by isolating Lacey behind bars or ostracizing her further. Like so many addicts, Lacey needs to know that she is loved, to belong in her community. Let Lacey continue to create beautiful flower arrangements and watch her children grow.

Dated at Milwaukee Wisconsin this 18th Day of September, 2018.

                Respectfully submitted,

                /s/ Susan L. Karaskiewicz
                Susan L. Karaskiewicz
                State Bar No. 1018376
                P.O. Box 510313
                Milwaukee, Wisconsin 53202
                Telephone: 414-531-5076
                Email: slk.law@outlook.com

---

[1] The collateral consequences of incarcerating women are significant. Approximately 75 to 80 percent of incarcerated women are mothers with minor children. Nearly 65 percent had minor children living with them at the time of their arrest—children who have become more vulnerable and at-risk as a result of their mother's incarceration and will remain so for the rest of their lives, even after their mothers come home. In 1996, Congress passed welfare reform legislation that gratuitously included a provision that authorized states to ban people with drug convictions from public benefits and welfare. The population most affected by this misguided law is formerly incarcerated women with children, most of whom were imprisoned for drug crimes. These women and their children can no longer live in public housing, receive food stamps, or access basic services. In the last twenty years, we've created a new class of "untouchables" in American society, made up of our most vulnerable mothers and their children. (Excerpt from Bryan Stephenson's Just Mercy, A Story of Justice and Redemption, p.236

3